UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
L.A.M. RECOVERY INC.,

        Plaintiff,

        -against-                              04 Civ. 0701 (LAK)

THE DEPARTMENT OF CONSUMER
AFFAIRS, et al.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Ronald P. Hart
        *Attorney for Plaintiff*

        Gabriel Taussig
        Dana Biberman
        Sheryl Neufeld
        Assistant Corporation Counsels
        MICHAEL A. CARDOZO
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge*.

        Plaintiff, who was in the business of repossessing vehicles, now alleges that a city

ordinance requiring tow truck operators to obtain a towing license violates the Commerce Clause

of the U.S. Constitution. Defendants move for summary judgment dismissing the complaint.

*Facts*

*Plaintiff's Dispute with the City*

This Court already has dismissed two of plaintiff's three claims in a previous opinion, familiarity with which is assumed.[1]  The following summarizes only those facts relevant to the current claim, facts that essentially are undisputed.

On February 8, 2001, a New York City police officer issued a notice of violation to plaintiff L.A.M. Recovery Inc. ("LAM") for "towing" without a license in violation of Section 20-496(a) of the Administrative Code.[2]  On February 15, 2001, an administrative law judge ("ALJ") found that plaintiff had been operating a "tow truck" within the meaning of the ordinance[3] and that no statutory exemption applied.  Accordingly, the ALJ directed LAM to cease towing without a license and imposed a $1,000 fine.  He ordered also that LAM's premises be padlocked and its vehicles seized if LAM's primary use of this property was for unlicensed towing.

*State Court Litigation*

In April 2002, LAM brought an Article 78[4] proceeding against the City of New York, the Department of Consumer Affairs ("DCA"), and the DCA's commissioner in New York Supreme Court, Kings County.  It argued in part that the licensing scheme would force it to go out of business,

---

[1] *L.A.M. Recovery Inc. v. Dep't of Consumer Affairs*, 345 F. Supp.2d 405 (S.D.N.Y. 2004).

[2] N.Y.C. AD. C. § 20-496(a).

[3] *Id.* § 20-495(e); *see also Id.* § 20-495(d).

[4] N.Y. CPLR Art. 78.

that 49 U.S.C. § 14501(c) preempted the DCA from regulating repossessors, and that the City towing ordinance deprived LAM of equal protection of the laws. LAM's memorandum of law asserted also that LAM had been deprived of due process of law and that application of the ordinance constituted a taking. In an opinion dated October 25, 2002, the court held that LAM's regulatory taking argument was without merit because "the licensing process is not onerous, and the petitioner has failed to demonstrate that it could not comply with the statute and maintain its repossession business."[5] It held next that LAM had failed to "demonstrate[] that the regulations are preempted by Federal law."[6] Finally, the court said that LAM's other "contentions [we]re without merit."[7]

*Federal Court Litigation*

LAM brought this action in January 2004 against the DCA, former DCA commissioner Jane Hoffman[8] and the City of New York (collectively the "City"). Count one asserted a claim under the Commerce Clause.[9] Counts two and three advanced the same preemption and takings arguments previously rejected in state court.

---

[5]
*LAM Recovery, Inc. v. Dep't of Consumer Affairs*, 193 M.2d 754, 758, 749 N.Y.S.2d 862, 865 (Sup. Ct. Kings Co. 2002).

[6]
*Id*.

[7]
*Id*.

[8]
DCA commissioner Jane Hoffman was replaced in January 2002.

[9]
Count one of the complaint, entitled "unlawful interference with interstate commerce," contends that "the state action alleged herein (the requirement that the plaintiff [*sic*] already licensed as a transporter, also be licensed as a wrecker/tower), [*sic*] is in derogation of the Commerce Clause." Cpt. ¶ 42.

In November 2004, this Court dismissed counts two and three under principles of issue preclusion.[10] It denied defendants' motion to dismiss the Commerce Clause claim on preclusion grounds because that claim had not been brought in state court and deferred the question whether it had subject matter jurisdiction over that claim.[11] Defendants now move for summary judgment dismissing the Commerce Clause claim on the ground that this Court lacks subject matter jurisdiction and, in any event, they are entitled to judgment on the merits.

*Discussion*

A.    *Summary Judgment Standard*

Under Rule 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12] In passing on such a motion, a district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party.[13] At the same time, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."[14]

---

[10]

*L.A.M. Recovery*, 345 F. Supp.2d at 410-11.

[11]

*Id*. at 411.

[12]

Fed. R. Civ. P. 56(c).

[13]

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[14]

*Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

*B.      Rationality of the Ordinance*

        LAM first argues that the ordinance violates the Commerce Clause because it is not rationally related to any legitimate health, safety, or welfare interest.[15]  It contends also that the ordinance goes beyond Congress's power under the Necessary and Proper Clause.[16]

        These arguments are utterly without merit.  Nothing in the Commerce Clause demands a rational relationship between state or local legislation and the ends it is enacted to serve.  To the extent the Constitution requires such a relationship, it does so through the Due Process Clause of the Fourteenth Amendment.[17]  But plaintiff's due process arguments are foreclosed by the judgment in the state court action[18] and, in any case, baseless.[19]  The argument under the Necessary and Proper Clause is frivolous, as Article I of the Constitution defines the powers of Congress, not

---

[15]  Cpt. ¶¶ 46-47.

[16]  *See* Pl. Br. at 14-16.

[17]  U.S. Const. Amend. 14, § 1.  *See also Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955).

[18]  *LAM Recovery*, 193 M.2d at 757, 749 N.Y.S.2d at 865.  LAM's due process argument fails here for the same reasons counts two and three of LAM's complained previously failed in *L.A.M. Recovery*, 345 F. Supp.2d 405.

[19]  Even assuming that a property or liberty interest were implicated, the City ordinance need only be rationally related to a legitimate state interest.  Statutes regulating professions and other callings are "presumed to have a rational basis unless the plaintiff shows that 'the legislative facts upon which the [statute] is based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Lange-Kessler v. Dep't of Educ.*, 109 F.3d 137, 140 (2d Cir. 1997) (quoting *Vance v. Bradley*, 440 U.S. 93, 111 (1979)).  Plaintiff has offered no such evidence.

the states.[20]

C.      *The Dormant Commerce Clause*

Plaintiff next contends that the ordinance violates the dormant Commerce Clause.

"[T]he Constitution's express grant to Congress of the power to 'regulate Commerce . . . among the several States' contains 'a further, negative command, known as the dormant Commerce Clause.'"[21]   In the absence of Congressional action to the contrary, this negative command precludes a state from "placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear."[22]  It has invalidated statutes that facially or clearly discriminate against interstate commerce[23] as well as statutes applying evenhandedly to people from within and without the state, but which substantially burden interstate commerce.[24]  Nevertheless, as the restraint on state power imposed by the dormant Commerce Clause is a

---

[20]

The Necessary and Proper Clause provides that "*[t]he Congress* shall have Power" "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers."  U.S. Const. Art. I, § 8, cls. 1, 18 (emphasis added).

[21]

*American Trucking Ass'ns., Inc. v. Michigan Public Service Comm'n*, ___ U.S. ___, 125 S.Ct. 2419, 2422 (2005) (citing U.S. Const. Art. I, §8 cl. 3; *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995)) (citations omitted).

[22]

*Id.* at 2423 (citing *Jefferson Lines*, 514 U.S. at 180).

[23]

*See e.g., Philadelphia v. New Jersey*, 437 U.S. 617 (1978).  Such statutes face a "virtually *per se* rule of invalidity."  *Id.* at 624.  *See also Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 108 (2d Cir. 2001), *cert. denied*, 536 U.S. 905 (2002).

[24]

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970); *see also Sorrell*, 272 F.3d at 108.

consequence of Congressional silence,[25] Congress may authorize a state to act within a sphere otherwise reserved to Congress.[26]

      The City ordinance at issue does not distinguish facially between in-staters and out-of-staters. It applies evenhandedly. This Court therefore must apply the *Pike*[27] balancing test under which a facially neutral statute or ordinance will pass constitutional muster unless it "actually imposes 'burdens on interstate commerce that exceed the burdens on intrastate commerce.'"[28] "The statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce."[29] Only where the burdens on interstate commerce imposed by a statute are "clearly excessive in relation to the putative local

---

[25]

      The dormant Commerce Clause is essentially a default rule for interpreting Congressional silence. Courts read Congressional inaction as if it barred restrictions on the freedom of trade among the several states because "[o]ur Constitution 'was framed upon the theory that the peoples of the several states must sink or swim together.'" *American Trucking*, 125 S.Ct. at 2422 (citing *Baldwin v. G. A. F. Seelig, Inc.*, 294 U.S. 511, 523 (1935)). The rule "reflects a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Granholm v. Heald*, ___ U.S. ___, 125 S. Ct. 1885, 1895 (2005) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 325-326 (1979)).

[26]

      *See, e.g., White v. Mass. Council of Constr. Employers*, 460 U.S. 204, 213 (1983).

[27]

      397 U.S. 137.

[28]

      *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217 (2d Cir. 2002) (quoting *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 75 (2d Cir. 1998)).

[29]

      *Freedom Holdings*, 357 F.3d at 217 (quoting *Sorrell*, 272 F.3d at 109).

benefits"[30] will the dormant Commerce Clause invalidate it.

LAM apparently alleges that the ordinance burdens interstate commerce because the DCA may fine tow trucks belonging to towing companies from outside of New York City when such trucks do not have a New York license. According to LAM, this burdens interstate commerce excessively.[31]

The City responds that this court is without subject matter jurisdiction on account of the *Rooker-Feldman* doctrine. In the alternative, according to defendants, the Commerce Clause claim must fail because (1) LAM lacks standing "to raise a broad interstate commerce challenge on behalf of residents of other states,"[32] and (2) any other argument under the Commerce Clause is meritless because "[a]ny burden the towing license requirements place on plaintiff is exactly the same regardless of whether plaintiff repossesses a car in Brooklyn or New Jersey."[33]

D.     *The* Rooker-Feldman *Doctrine*

Defendants argue that subject matter jurisdiction is lacking because this Court does not have the authority to review state court judgments. Indeed, "[u]nder the legislation of Congress, no court of the United States other than [the Supreme Court may] entertain a proceeding to reverse

---

[30]
      *American Trucking*, 125 S.Ct. at 2423 (citing *Pike*, 397 U.S. at 142).

[31]
      LAM extensively quotes a decision by Judge Owen that came to such a conclusion in granting a preliminary injunction. *Auto. Club of N.Y., Inc. v. Dykstra*, 326 F. Supp.2d 568 (S.D.N.Y. 2004).

[32]
      Def. Br. at 14 n.6.

[33]
      *Id*. at 14.

or modify the judgment" entered by a state court.[34]  This rule, known as the *Rooker-Feldman* doctrine, "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction."[35]

Prior to the Supreme Court's recent decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,[36] the Second Circuit had explained that the *Rooker-Feldman* doctrine is not confined to claims "that seek direct review of judgments of state courts."[37]  It extends also to claims that could have been, but were not, brought in state court if such claims are "'inextricably intertwined' with earlier state court determinations."[38]  In such a case, the doctrine is generally coextensive with preclusion law so that "subsequent litigation will be barred under the *Rooker-Feldman* doctrine if it would be barred under principles of preclusion."[39]

---

[34]
> *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings.").

[35]
> *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 644 n.3 (2002).  The determination that 28 U.S.C. § 1331 does not authorize district courts to review state court judgments stems from the fact that 28 U.S.C. § 1257 grants to the Supreme Court jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had" under certain circumstances.  28 U.S.C. § 1257(a).

[36]
> ___ U.S. ___, 125 S.Ct. 1517 (2005).

[37]
> *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004).

[38]
> *Id; Latino Officers Ass'n v. City of New York*, 253 F. Supp.2d 771 (S.D.N.Y. 2003).  *See also Feldman*, 460 U.S. at 482 n.16.

[39]
> *Phifer v. City of New York*, 289 F.3d 49, 56 (2d Cir. 2002) (quoted in *Vargas*, 377 F.3d at 205); *see also Vargas*, 377 F.3d at 205 ("If a suit or claim would be barred in state court by either [claim or issue preclusion], Rooker-Feldman prevents the federal court from asserting subject matter jurisdiction.").

Where, as here, an Article 78 plaintiff asserts a claim in federal court seeking damages after losing in state court, only issue preclusion is relevant.[40] Under New York law, issue preclusion applies when "(1) the issue in question was actually and necessarily decided, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."[41] The question, then, is whether this claim may "succeed[] only to the extent that the state court wrongly decided the issues before it."[42] If so, this Court lacks jurisdiction to hear it.

The continuing validity of the "inextricably intertwined" aspect of the *Rooker-Feldman* doctrine is debatable after *Exxon Mobil*. There, Saudi Basic Industries Corp. ("SABIC") had sued two subsidiaries of Exxon Mobil Corporation ("ExxonMobil") in Delaware Superior Court. ExxonMobil countersued in federal court two weeks later. Before the state court action went to trial, the district court denied SABIC's motion to dismiss. ExxonMobil subsequently prevailed in the state court action, winning a jury verdict in excess of $400 million. Thereafter, the circuit court heard an interlocutory appeal from a denial of SABIC's motion to dismiss the federal action. It held that the subject matter jurisdiction of the lower federal courts disappeared at the time of the state court judgment. The Supreme Court disagreed, holding that "[t]he *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

---

[40]

    *L.A.M. Recovery*, 345 F. Supp.2d at 409-10; *Vargas*, 377 F.3d at 205.

[41]

    *Vargas*, 377 F.3d at 205-6 (citing *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)).

[42]

    *Vargas*, 377 F.3d at 208 (citing *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25 (Marshall, J., concurring)).

review and rejection of those judgments."[43]

Though the Supreme Court referred to the footnote in *Feldman* that forms the basis of the "inextricably intertwined" line of cases,[44] the Supreme Court cautioned that "[p]reclusion . . . is not a jurisdictional matter."[45] Furthermore, it observed that 28 U.S.C. § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, *albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party*, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"[46] The question after *Exxon Mobil*, therefore, is whether a district court has jurisdiction to hear an "inextricably intertwined" claim brought subsequent to a state court judgment, although the claim would fail under state law rules of preclusion, or whether

---

[43]

     *Exxon Mobil*, 125 S.Ct. at 1521-22. The present case clearly meets this threshold criterion, implying that the *Rooker-Feldman* doctrine potentially applies. LAM brought this action in January 2004, over a year after the Kings County Supreme Court determination on the merits of October 25, 2002. Under New York law, "[t]he power of an appellate court to review a judgment is subject to an appeal being timely taken." *Hecht v. New York*, 60 N.Y.2d 57, 61, 454 N.E.2d 527, 529 (1983). *See also O'Connor v. Sleasman*, 14 A.D.3d 986, 788 N.Y.S.2d 518 (3d Dept. 2005); N.Y. CPLR 5513, 5515. Furthermore, LAM arguably complains of an injury caused by a state-court judgment: that of the ALJ which essentially was appealed in the Article 78 proceeding.

[44]

     *Exxon Mobil*, 125 S.Ct. at 1523 n.1.

[45]

     *Id.* at 1527.

[46]

     *Id.* (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)) (emphasis added).

subject matter jurisdiction over such a claim always is lacking.[47]

E.      *Relation of the Commerce Clause Claim to the State Court Litigation*

      Regardless of whether it is framed as a jurisdictional matter or involves solely preclusion, the question is whether issues actually and necessarily decided in state court must be revisited for the plaintiff to prevail.[48]  The City contends that this is the case, observing that "[w]here state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce."[49]  The City argues that "Congress has specifically empowered state and local governments to enact regulations pertaining to the safety and financial responsibility of motor carriers,"[50] citing 49 U.S.C. § 14501(c)(2)(A).  According to defendants, the state court decided that the City enacted Section 20-496(a) of the Administrative Code pursuant to the authority granted by Congress.  Therefore, they contend, LAM cannot prevail on its dormant Commerce Clause claim unless this Court overturns that conclusion.

      The City's contention is without merit.  Section 14501(c)(1) provides that:

"Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price,

---

[47]

      The Second Circuit has not yet ruled on this issue.  A cursory review of the decisions of court of appeals decisions in other circuits suggests that *Exxon Mobil* has not altered the "inextricably intertwined" test pre-existing that decision.

[48]

      Defendants raised the defenses of issue and claim preclusion in ¶ 54 of its answer.

[49]

      *White*, 460 U.S. at 213 (cited in Def. Br. at 10).

[50]

      Def. Br. at 11.

route, or service of any motor carrier . . . with respect to the transportation of property."[51]

Paragraph (2) then states:

"(2) Matters not covered. -- Paragraph (1) --

"(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

"(B) does not apply to the transportation of household goods; and

"(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle."[52]

The state court decided that Section 20-496(a) of the Administrative Code was not preempted by 49 U.S.C. § 14501(c)(1) because 49 U.S.C. § 14501(c)(2) applied.[53] The state court, however, did not decide whether Section 14501(c)(2) constituted a Congressional grant of authority to act in an area otherwise within the dormant Commerce Clause.[54] This Court therefore must

---

[51]

49 U.S.C. § 14501(c)(1).

[52]

49 U.S.C. § 14501(c)(2).

[53]

*L.A.M. Recovery*, 193 M.2d at 758, 749 N.Y.S.2d at 865.

[54]

An exception to a Congressional bar on the permissible exercise of power by a state or city does not necessarily constitute a positive grant of power, or authorization. Indeed, "[p]reemption analysis 'starts with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *City of Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424, 438 (2002) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

resolve whether 42 U.S.C. § 14501(c)(2) constitutes a grant of authority or merely an exception to a Congressional bar.

The words of the statute clearly indicate that Section 14501(c)(2) qualifies the limitation on state power imposed by Congress in Section 14501(c)(1).[55] The Supreme Court expressly has noted that Section 14501(c)(2)(A) preserves the traditional power of states to regulate safety.[56] On the City's reading of Section 14501(c)(2)(A), however, a state could enact regulations that facially interfere with interstate commerce if those regulations are enacted pursuant to its safety regulatory authority.[57]

This argument is unpersuasive. Section 14501(c)(2)(A) is an "exception to preemption."[58] It does not invite courts to reinterpret Congressional silence on the issue of burdens on interstate commerce. Courts require much more than the express absence of preemption to conclude that a city or state is authorized by Congress to interfere with interstate commerce.[59] Thus,

---

[55]

    Section 14501(c)(1) provides that it applies, "*[e]xcept* as provided in paragraphs (2) and (3)." (Emphasis added.)

[56]

    *City of Columbus*, 536 U.S. at 438 ("It is the expressed intent of § 14501(c)(2)(A) that the preemption rule of § 14501(c)(1) 'not restrict' the *existing* 'safety regulatory authority of a State.'"). Defendants wrongly contend that "when the City Council enacted the towing regulations, it acted pursuant to the authority granted to it by Congress to regulate in a field that is otherwise regulated by the federal government." Def. Reply at 3 n. 2.

[57]

    49 U.S.C. § 14501(c)(2)(A).

[58]

    *City of Columbus*, 536 U.S. at 431. *See also Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (2d Cir. 1999)

[59]

    In *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 652-53 (1981), for example, the Supreme Court held that the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, removed limitations imposed by the dormant Commerce Clause. The

the state court's determination that 42 U.S.C. § 14501(c)(1) does not preempt the ordinance is not material to LAM's Commerce Clause claim.[60]

*F.      Standing*

The City next contends that LAM lacks standing to allege that the ordinance violates the dormant Commerce Clause by burdening out-of-state tow trucks passing through New York City.

(a)      *The doctrine of standing*

The doctrine of standing embodies both constitutional and prudential restrictions upon the jurisdiction of this Court.    Article III's grant of judicial power over "Cases" and "Controversies"[61] results in "essential and unchanging"[62] constitutional limitations upon judicial power.  The Supreme Court has explained that a plaintiff must satisfy three elements to come within the judicial power of the federal courts.  "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or

---

statute provides: "Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, *and that silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States*."  (Emphasis added).  *See also Granholm v. Heald*, ___ U.S. ___, 125 S. Ct. 1885 (2005).

[60]

The City raises no other issue suggesting that LAM's Commerce Clause claim is "inextricably intertwined" with the prior state court judgment.

[61]

U.S. Const. Art. III, § 2, cl. 1.  *See Allen v. Wright*, 468 U.S. 737, 750-51 (1984).

[62]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

imminent, not conjectural or hypothetical.'"[63]  Second, the injury and the "conduct complained of" must be causally related; that is, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'"[64]  Lastly, the injury must be redressable.[65]

Courts have imposed prudential limits on their jurisdiction as well, "considerations that are part of judicial self-government."[66]  Among them is "the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"[67]  As the rule is prudential, a federal court in its discretion may hear cases involving assertions of third party rights.  Nonetheless, that discretion is not unbounded.  The Supreme Court has explained that "a party seeking third-party standing [must] make two additional showings.  First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right.  Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests."[68]

---

[63]

*Id.* (citations omitted).

[64]

*Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).

[65]

*Id.* at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'").

[66]

*Id.* at 560.

[67]

*Kowalski v. Tesmer*, ___ U.S. ___, 125 S. Ct. 564, 567 (2004) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[68]

*Id.*  The Supreme Court noted also that it ignores these criteria in the context of the First Amendment or "when enforcement of the challenged restriction *against the litigant* would

(b)     *LAM's standing to bring the Commerce Clause claim*

LAM contends that "[t]he cumulative effects of the City's actions on the part of the DCA have put Lam Recovery,Inc.,–a thriving Brooklyn-based repossession corporation for 15 years–out of business.  The costs to the Plaintiff and his employees in emotional and financial hardship is in the millions of dollars."[69]  LAM seeks $10 million in damages.  Insofar as these are the alleged effects, however attenuated, of state court judgments, claims for compensation for such injuries are foreclosed by *Rooker-Feldman*.  LAM's complaint, however, could be read to allege that the application of the City ordinance, rather than state court judgments, caused its injuries.  Even so read, LAM's complaint would fail for lack of standing.

As a preliminary matter, the state court ruled that "no reason is apparent why [LAM] cannot comply with DCA procedures and obtain the required licensing."[70]  This Court may well be barred by principles of preclusion from finding that the injury of which LAM complains is "fairly . . . trace[able]" to the application of the City ordinance.  But the Court need not rest on that ground.

At root, the contention that the application of the ordinance to out-of-state tow operators runs afoul of the dormant Commerce Clause is an assertion by LAM, a New York City entity, of the alleged rights of out-of-staters.  LAM, however, fails to explain why the third-party standing doctrine should be ignored.  It has not met any of the criteria set forth by the Supreme

---

result indirectly in the violation of third parties' rights." *Id*. at 567-68.

[69]     Cpt. ¶ 66 (errors in the original).

[70]     *L.A.M. Recovery*, 193 M.2d at 758, 749 N.Y.S.2d at 865.  LAM had argued that the ordinance would cause LAM to go bankrupt.  *Id*.

Court. It does not possess a close relationship to those aggrieved by the absence of the exemption. Nor are those parties incapable of protecting their own interests.[71]

This conclusion draws support from Supreme Court decisions in which in-state residents were found to have standing to pursue claims under the dormant Commerce Clause. In *Bacchus Imports v. Dias*,[72] for instance, the Supreme Court held that Hawaiian wholesalers had standing to challenge a Hawaiian tax on the sale at wholesale of liquors produced out of state. It observed that "[t]he wholesalers are . . . liable for the tax. Although they may pass it on to their customers, and attempt to do so, they must return the tax to the State whether or not their customers pay their bills."[73] The wholesalers therefore were specifically harmed by the burden imposed by the tax on interstate commerce. Similarly, in *GMC v. Tracy*,[74] the Supreme Court held that standing to challenge a statute under the dormant Commerce Clause "does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured, as in this case where the customer is liable for payment of the tax and as a result presumably pays more for the gas it gets from out-of-state producers and marketers."[75] In both cases, in-staters were harmed

---

[71]

Furthermore, if LAM were to bring its claim as one for third party rights, LAM would be seeking declaratory judgment. But this would be barred by claim preclusion. The Commerce Clause claim is sheltered from claim preclusion only because LAM seeks monetary damages.

[72]

468 U.S. 263 (1984).

[73]

*Id.* at 267.

[74]

519 U.S. 278 (1997).

[75]

*Id.* at 286.

by statutes precisely because they burdened interstate commerce.

LAM was not harmed by this ordinance's alleged burdens upon interstate commerce. Even assuming that the ordinance burdens interstate commerce, LAM, a New York City based operator of tow trucks, would be a member of the class that the ordinance protects. LAM's claim may be analogized to a suit by an in-state resident challenging a state tax that preferentially treats in-staters. The in-state dweller in such a case would lack standing.

G.    *LAM's Remaining Commerce Clause Contention*

LAM's complaint alleges also that "the requirement that the plaintiff, already licensed as a transporter, also be licensed as a wrecker/tower" is in derogation of the Commerce Clause.[76] LAM arguably would have standing to bring this claim, but this statutory requirement does not hamper the flow of commerce between the states. Nor does LAM argue that it does.[77] Because LAM has failed to point to any evidence to suggest that this requirement burdens interstate commerce, this remaining contention must be dismissed.[78]

*Conclusion*

LAM is precluded from re-litigating its Due Process claim and lacks standing to assert its dormant Commerce Clause claim. Plaintiff's other contentions either are without legal merit or

---

[76]

Cpt. ¶ 42.

[77]

*See generally* Pl. Br. at 16-18.

[78]

*See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

lack sufficient factual support.  Accordingly, defendants' motion for summary judgment dismissing the complaint is granted.  Upon entry of judgment, the Clerk shall close the case.

SO ORDERED.

Dated: July 20, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)